IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION



MAURICE GOLDEN,                         )
                                        )
         Plaintiff                      )      1:21-CV-00187-RAL
                                        )
    vs.                                 )
                                        )      RICHARD A. LANZILLO
U.M. PERRIN, AND C.O. SIBBLE,           )      UNITED STATES MAGISTRATE JUDGE
                                        )
                                        )      MEMORANDUM OPINION ON
         Defendants                     )      DEFENDANTS' MOTION TO DISMISS
                                        )      FOR FAILURE TO STATE A CLAIM
                                        )
                                        )      ECF NO. 29
                                        )
                                        )

I.      Introduction

Plaintiff Maurice Golden (Golden), an inmate in the custody of the Pennsylvania

Department of Corrections (DOC) at its State Correctional Institution at Forest (SCI-Forest),

initiated this *pro se* civil rights action against Defendants Yvette Perrin (Perrin), a unit manager,

and Leo Sibble (Sibble), a corrections officer, employed at that institution.[1]  The Defendants

moved to dismiss some claims in Golden's original complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).  ECF Nos. 18, 19.  Golden filed a motion to amend his complaint; the Court

granted that motion, docketed his amended complaint, and denied the motion to dismiss as

moot.[2]  ECF Nos. 24–26.

---

[1] This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.  The parties have consented to
the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this action as authorized by 28
U.S.C. § 636.  ECF Nos. 8, 8-1, 14.

[2] The Court noted then that it was granting Plaintiff's motion "despite leave of Court not being required in such a
circumstance" [ECF No. 25] because he moved within the time allowed to amend as a matter of course.  Fed. R.
Civ. P. 15(a)(1)(B).

Golden's amended complaint includes three claims against Perrin and Sibble in their individual capacities pursuant to 42 U.S.C. § 1983: a Fourteenth Amendment due process claim, an Eighth Amendment conditions of confinement claim, and a First Amendment retaliation claim. ECF No. 26, ¶¶ 53, 55–65. Golden also claimed that the Defendants violated the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, by denying him a "sanitary environment." ECF No. 26, ¶ 54. He also brought one state law tort claim for intentional infliction of emotional distress (IIED). *Id.*, ¶ 66.

The Defendants have moved to dismiss the retaliation and state law IIED claims of Golden's amended complaint.[3] ECF Nos. 29, 30. The motion is fully briefed and ready for decision. ECF No. 33.

The motion to dismiss will be GRANTED IN PART and DENIED IN PART.

II.     Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on

---

[3] Defendants do not seek dismissal of Golden's Eighth Amendment conditions of confinement claim at this stage of the proceedings.

its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established

in *Conley v. Gibson*, 355 U.S. 41 (1957)).  In making this determination, the court must accept as

true all well-pled factual allegations in the complaint and views them in a light most favorable to

the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to

dismiss, a complaint must provide more than labels and conclusions.  *Twombly*, 550 U.S. at 555.

A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v.*

*Allain*, 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences drawn by a

plaintiff if they are unsupported by the facts in the complaint.  *See California Pub. Emp. Ret. Sys.*

*v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*,

132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions disguised as

factual allegations.  *Twombly*, 550 U.S. at 555.  *See also McTernan v. City of York,*

*Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of

the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the

following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must
> plead to state a claim.' Second, the court should identify
> allegations that, 'because they are no more than conclusions, are
> not entitled to the assumption of truth.' Finally, 'where there are
> well-pleaded factual allegations, a court should assume their
> veracity and then determine whether they plausibly give rise to an
> entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v.*

*Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  This determination is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When ruling on a Rule 12(b)(6) motion to dismiss, a district court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). While a district court may not generally consider matters extraneous to pleadings in this posture, it may consider documents integral to or explicitly relied on in a complaint without converting the motion to dismiss into a motion for summary judgment. *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added).

While the foregoing principles apply to all complaints in federal court, *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read the factual allegations of a *pro se* complaint to state a valid claim on which the litigant could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").[4]

---

[4] In addition, Golden's claims are subject to the district court's screening obligation under the Prison Litigation Reform Act because he is a prisoner seeking redress "from a governmental entity or officer or employee of a

4

III.    Allegations of the Amended Complaint

The Court accepts the following factual allegations in Golden's amended complaint as true for purposes of Defendants' motion to dismiss. *See US Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). On November 16, 2020, Golden turned in his dirty laundry for washing, including one winter coat, two pairs of state-issued pants, and one blanket. ECF No. 26, ¶ 14. Three days later, he was transferred to a different housing unit. *Id.*, ¶ 15. Concerned that his laundry would not be forwarded to his new cell, Golden told a corrections officer on his new housing unit about his laundry. *Id.*, ¶ 20. That officer told him to wait and see whether he received his laundry and, if he did not, to contact the unit manager, Defendant Perrin. *Id.* A unit manager's job duties include ensuring inmates have clothing, bedding, and the like. *Id.*, ¶ 44. Laundry usually takes about a week to return, so he waited that long. *Id.*

When his laundry never arrived, he submitted two request slips on November 23, 2020: one to a unit counselor in his old housing unit and one to Perrin in his new housing unit. *Id.* He explained the situation and said that he needed replacements. *Id.*, ¶ 20. The unit counselor disclaimed responsibility for such matters, and Perrin did not respond. *Id.*, ¶¶ 21-22. From November 19 through December 10, 2020, Golden spoke to three corrections officers and Perrin about his laundry. *Id.*, ¶ 23. He sent two more written requests to Perrin during that timeframe. *Id.* He also told Perrin and Sibble that, during that period, "he was freezing and shivering

---

governmental entity…," 28 U.S.C. § 1915A, and proceeding *in forma pauperis*. § 1915(e)(2)(B). A court "shall…dismiss the complaint, or any portion of the complaint, if the complaint…is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(2). In performing section 1915 screening, a court uses the same standard that applies to Rule 12(b)(6) motions. *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008). This screening obligation "is not excused even after defendants have filed a motion to dismiss," *Banks*, 568 F. Supp. 2d at 587–89, and the Court must dismiss the complaint if it fails to state a claim even "based upon grounds not raised by the defendants in their motion to dismiss." *Dare v. United States*, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007), *aff'd*, 264 Fed. Appx. 183 (3d Cir. 2008) (citations omitted).

throughout the nights due to the low temperatures and lack of a winter coat and blanket." *Id.*, ¶ 26.

Golden spoke to Sibble again on December 1, 2020. *Id.*, ¶ 28. He complained about the cold temperatures. He told Sibble that if he did nothing about the situation, he would file a grievance. In response, Sibble "verbally threatened Plaintiff that, if Plaintiff did so, that he would issue Plaintiff a misconduct for complaining too much." *Id.*, ¶ 29.

Golden filed a grievance about Sibble's reaction, writing that he had threatened him with a misconduct. *Id.*, ¶ 41. He wrote Grievance No. 903257 on December 4, 2020, and it was received on December 8, 2020.

On December 10, 2020, Golden asked Perrin if she had received his most recent request for a blanket. *Id.*, ¶ 30. She replied that she had not, and that she had been "too busy." *Id.* But Golden had requested that corrections officer Knapp speak with Perrin about his winter coat and blanket. *Id.*, ¶ 31. When Golden later asked Knapp about this, she told him that she had orally told Perrin and handed her the written request. *Id.*

At this point, Golden felt "helpless and desperate." *Id.*, ¶ 32. He told Perrin that "he intended to commit suicide because he could not stand the cold any longer." *Id.* After this, Golden was taken to the Mental Health Department and interviewed by a mental health professional. *Id.*, ¶¶ 33, 34. He explained that he was cold without his winter coat and blanket. *Id.* He said that he would not commit suicide if he was given a blanket, a winter coat, and two pairs of pants. *Id.*, ¶ 38. He then spoke with Lieutenant Hollis. Golden was moved for mental health reasons, Hollis said. *Id.*, ¶ 35. He had not received a misconduct, he added. *Id.* Golden was then taken to the Restricted Housing Unit (RHU). *Id.*, ¶ 38.

6

That same day, Sibble issued Golden a misconduct. *Id.*, ¶ 39. The misconduct charged him with two counts: "threatening an employee or their family with bodily harm" and "using abusive, obscene, or inappropriate language to, or about an employee." *Id.* The misconduct stated in part:

> On the above date and approximate time, this officer heard [inmate] Golden [ ] yell out his cell door 'Hey you bitch I've been patient enough with you. Your (sic) gonna find out what I'm about.' These statements were made to [unit manager] Perrin as she was walking across the day room on F-unit A pod.

*Id.*, ¶ 39. Sibble and Perrin, "in joint conspiracy," fabricated this misconduct to retaliate against Golden for complaining about his clothes, blanket, and the cold. *Id.*, ¶ 40.

A hearing examiner held a hearing and made findings of fact on December 14, 2020. *Id.*, ¶¶ 42, 50. The hearing examiner's findings stated in part:

> Perrin testifies under oath that she was trying to explain and then [Golden] said things like 'do your job' 'central office will hear everything' 'you will find out what I'm about' and 'you fuckin bitch.' He had clothing and a blanket – had (sic) everything he needed.

*Id.*, ¶ 42 (alteration added).

Golden denied using profanity. *Id.*, ¶ 43. He admits he was trying to get clothes, a winter coat, and blanket from Perrin. *Id.* The hearing examiner dismissed the charge for threatening an employee with bodily harm but found Golden guilty of the charge for using abusive, obscene, or inappropriate language to or about an employee. *Id.*, ¶ 50.

Due to the cold temperatures, Golden suffered "severe anxiety, apprehension, dread, hopelessness, depression, and emotional distress," *id.*, ¶ 62, and "was freezing and shivering

throughout the nights." *Id.*, ¶ 26.  He wore the same pair of pants for twenty-four days. *Id.*, ¶ 59.

He alleged no other injuries.

The amended complaint is not divided into counts.  As relief, Golden seeks compensatory

and punitive damages, costs, and other relief that the Court deems proper.  ECF No. 26, p. 8.

IV.     Analysis

A.     Retaliation

The Defendants argue that Golden's retaliation claim should be dismissed because the

amended complaint does not support that he engaged in constitutionally protected activity or that

any such activity caused them to issue the misconduct against him.  ECF No. 30, p. 7.  In the

alternative, the Defendants argue that his claim fails because the misconduct would have been

issued regardless of any protected activity.  *Id.*

To state a retaliation claim, the plaintiff must allege facts to support that (1) he engaged

in protected activity; (2) officials took an adverse action against the plaintiff; and (3) "a causal

link" exists "between the exercise of his constitutional rights and the adverse action taken against

him." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d

220, 225 (3d Cir. 2000) (alteration in original)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.

2003).  "[A]n otherwise legitimate and constitutional government act can become

unconstitutional when an individual demonstrates that it was undertaken in retaliation for his

exercise of First Amendment speech." *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997).

When analyzing whether an inmate engaged in constitutionally protected activity, courts

should be mindful that "[l]awful incarceration brings about the necessary withdrawal or

limitation of many privileges and rights, a retraction justified by the considerations underlying

8

our penal system." *Jones v. North Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 125 (1977) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)).  Still, "prison inmates retain those constitutional rights that are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system." *White v. Napoleon*, 897 F.2d 103, 112 (3d Cir. 1990) (citing *Turner v. Safley*, 482 U.S. 78 (1987)); *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah*, 229 F.3d at 225 (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)).  This is an objective inquiry. *See Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012).  This requirement is not too demanding: "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Id.* (citing *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)).

The causation element of the retaliation claim is established only if the protected activity was a substantial or motivating factor in the state actor's decision to take the adverse action. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Anderson*, 125 F.3d at 163. To support this last element, "a plaintiff must come forward with more than 'general attacks' upon the defendant's motivations...." *Miskovitch v. Hostoffer*, 721 F. Supp. 2d 389, 396 (W.D. Pa. 2010) (citing *Crawford–El v. Britton*, 523 U.S. 574, 600 (1998)).  To show that retaliatory motive caused the adverse action, the plaintiff may rely on direct evidence or an inference of retaliatory motive arising from either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Rink v. Ne. Educ. Intermediate Unit 19*, 717 Fed. Appx. 126, 134 (3d Cir.

9

2017) ("the temporal proximity contemplated to allow for such an inference is on the order of days or weeks"). "These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

The parties disagree about whether Golden has alleged facts to support that he engaged in constitutionally protected activity. ECF Nos. 30, p. 7; 33, p. 2. Golden contends that his complaints to staff, promise to file a grievance, and the grievance itself were protected activity. In contrast, the Defendants argue that Golden's asserted protected activity was a single conversation that Golden had with Perrin on December 10 and that Golden did not engage in protected activity then because he threatened Perrin. The Court will address the Defendants' argument first.

A "true threat" is not constitutionally protected activity that may sustain a retaliation claim.[5] *See Torres v. Clark*, 522 Fed. Appx. 103 (3d Cir. 2013) (prisoner's statement that if a corrections officer kept "acting like he is above policy/law somebody is going to break his jaw is what I assume" was a true threat and thus not constitutionally protected) (citations omitted). The misconduct charged that Golden yelled at Perrin, "Hey you bitch I've been patient enough with you. Your gonna find out what I'm about." *Id.*, ¶ 39. Consistent with Perrin's testimony, the hearing examiner found that Golden said, "do your job," "central office will hear everything" "you will find out what I'm about," and "you fuckin bitch." *Id.*, ¶ 42. Although certain of these

---

[5] Some courts have held that prisoners do not have a right to use "inappropriate, disrespectful, and derogatory language." *See Whitenight v. Wetzel*, 2019 WL 6828392, at *7 (W.D. Pa. Dec. 12, 2019); *Brown v. Hannah*, 850 F. Supp. 2d 471, 479 (M.D. Pa. 2012). Golden denies using profanity, a denial the Court must accept at this stage of the proceedings.

statements might be interpreted as a true threat, Golden disputes that he used profanity. *Id.*, ¶ 43.
And the Court lacks context for these alleged statements because neither the complete
misconduct nor the complete hearing examiner's findings of fact are in the record. Factual
disputes and ambiguities cannot be resolved on a motion to dismiss. Accordingly, whether
Golden threatened Perrin cannot be determined on the current record.

In any event, Golden has alleged other protected activity. According to the amended
complaint, between November 23 and December 10, Golden complained multiple times to
Perrin, Sibble, and other corrections officers about his lack of clothing, a coat, and a blanket.
Perrin received three of Golden's four written request slips raising this issue during that period.
Golden complained to Sibble about the cold temperatures on December 1, 2022, and told him
that, if Sibble did nothing about his request for more clothing and a blanket, he would file a
grievance. [6] When Sibble responded that he would issue a misconduct if he did so, Golden filed
a misconduct about Sibble's reaction.[7]

Golden also engaged in protected activity when he filed a grievance. *See Fantone v.
Latini*, 780 F.3d 184, 192 n.8 (3d Cir. 2015); *Mitchell*, 318 F.3d at 530 ("Mitchell's allegation
that he was falsely charged with misconduct in retaliation for filing complaints against Officer

---

[6] Because Golden did file a grievance, the Court need not decide whether the threat or promise to file a grievance,
standing alone, amounts to protected activity. *Compare DeFranco v. Wolfe*, 387 Fed. Appx 147, 155 (3d Cir. 2010)
("assuming without deciding that threatening to file a lawsuit is constitutionally protected conduct, and that stripping
single-cell status is sufficiently adverse," the retaliation claim failed on the causation prong), *and Ford v. Jones*, 149
Fed. Appx. 316, 317 (5th Cir. 2005) (per curiam) ("As Ford correctly contends, his allegation that officials refused
to provide him with a jacket or allow him to return to his cell as a result of his threat to file a grievance was
sufficient to allege a violation of a constitutional right."), *with Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009)
("[I]t seems implausible that a threat to file a grievance would itself constitute a First Amendment-protected
grievance.").

[7] Golden's brief references another grievance he allegedly filed on December 1, 2020. ECF No. 33, p. 3. But the
Court cannot consider this because "the complaint may not be amended by the briefs in opposition to a motion to
dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal
marks and citation omitted); *Bracken v. Cty. of Allegheny*, 2017 WL 5593451, at *2 (W.D. Pa. Nov. 21, 2017).

Wilson implicates conduct protected by the First Amendment."). His expressive activity in three written request slips to Perrin also qualifies as protected activity. *See Baez v. Mooney*, 2021 WL 816013, at *4 (W.D. Pa. Feb. 8, 2021), *report and recommendation adopted*, 2021 WL 808726 (W.D. Pa. Mar. 3, 2021) ("the filing of a request slip is a protected activity") (collecting cases); *Kelly v. Karnes*, 2011 WL 5040925, at *9-10 (M.D. Pa. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 5040900 (M.D. Pa. Oct. 24, 2011); *Floyd v. Klem*, 2008 WL 3914830, at *6 (M.D. Pa. Aug. 20, 2008) (prisoner sought religious accommodation via request slip). Treating Golden's request slips as protected activity is not inconsistent with his status as a prisoner because prisoners are required by the DOC's administrative grievance system to attempt to informally resolve a matter before grieving it and his written requests related to his conditions of confinement. *See Kelly*, 2011 WL 5040925, at *10 (M.D. Pa. Aug. 30, 2011).

The Defendants do not presently dispute that Golden experienced an adverse action. Indeed, Golden was moved to the RHU on December 10. ECF No. 26, ¶ 38. Moving an inmate to the RHU amounts to an adverse action. *See Allah*, 229 F.3d at 225 (transfer to administrative custody constitutes adverse action). And Golden's December 10 first-class misconduct (for threatening an employee and using inappropriate language) also may represent an adverse action because it prompted sanctions or loss of privileges. *See Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016); *Mitchell*, 318 F.3d at 530 ("[plaintiff]'s allegation that he was falsely charged with misconduct in retaliation for filing complaints against [a corrections officer] implicates conduct protected by the First Amendment").

Next, the Court must determine whether Golden alleged facts sufficient to support the personal involvement of Sibble and Perrin in either of these adverse actions. *See Brant v. Varano*, 717 Fed. Appx. 146, 149 (3d Cir. 2017). A defendant in a § 1983 action "must have

12

personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)). It is the plaintiff's burden to "show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). Allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient. *See Van Tassel v. Piccione*, 608 Fed. Appx. 66, 69-70 (3d Cir. 2015).

Sibble filed the misconduct against Golden, establishing his personal involvement in that adverse action. Golden's allegations also sufficiently connect Sibble to Golden's transfer to the RHU because Sibble allegedly knew that "governing DOC policy *allows* for [an inmate's] pre-hearing confinement and immediate placement in restricted housing" when the inmate is charged with a "first-class" misconduct (here, threatening an employee with bodily harm). ECF No. 26, ¶ 48 (emphasis added).

The amended complaint's allegations also minimally support Perrin's personal involvement. Golden alleged that Perrin and Sibble "joint[ly]" accused him in the misconduct of threatening Perrin. *Id.*, ¶¶ 40, 51. Perrin also testified at Golden's misconduct hearing. *Id.*, ¶ 42

Golden's allegations also support the causation element of his retaliation claim. First, Golden has pleaded an "unusually suggestive" temporal proximity between his protected conduct and the Defendants' adverse actions to support an inference of retaliatory motive: Sibble issued Golden the misconduct two days after he filed his grievance. *See Lauren W.*, 480 F.3d at 267; *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 759 n.15 (3d Cir. 2019) ("ample evidence" existed "from which a reasonable juror could conclude that a causal link existed" when the

13

protected activity and adverse action occurred within one week). Sibble's alleged threat to issue a misconduct if Golden grieved Sibble's alleged failure to respond to his requests for clothing and a blanket may also be considered direct evidence of his retaliatory motive. A plausible inference of Perrin's retaliatory motive and causation also arises based on the issuance of the misconduct shortly after Golden complained multiple times and submitted three request slips to Perrin about his conditions of confinement between November 23 and December 10.

A court can only infer retaliatory motive when the defendant knew about the protected activity. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188-89 (3d Cir. 2003) (jury could reasonably conclude that supervisor knew about employee's protected activity, reversing judgment as a matter of law against plaintiff); *Miller v. Knight*, 2021 WL 4445014, at *6 (W.D. Pa. Sept. 28, 2021) (dismissing prisoner's retaliation claim when complaint did not identify corrections officer's awareness of the allegedly protected activity). Although Golden does not specifically allege that Sibble knew of the grievance *when* he issued Golden's misconduct, the amended complaint includes allegations like those facts found sufficient to infer retaliatory motive in *Watson v. Rozum*, 834 F.3d 417, 422–23 (3d Cir. 2016).

In *Watson*, an inmate sued multiple prison officials for improperly issuing him a misconduct as retaliation for First Amendment activity. During a cell search, a corrections officer broke a radio antenna. A broken radio is considered contraband, so the inmate accompanied the officer to fill out the paperwork required when confiscating property. When the officer wrote that the antenna was already broken when he found it, the inmate protested, and asked the officer to write that he (the officer) had broken the radio. That officer refused, so the inmate asked the security captain for a grievance form (who refused to give him one). Later that day, another officer told the inmate that the inmate had given the corrections officer and security

14

captain a "hard time" when he asked for a grievance form rather than dropping the matter. As a result, that officer said, he would (and did) issue the inmate a misconduct. That same day, the inmate filed his grievance against the officer who broke his radio. The Court of Appeals noted that while "the allegedly retaliatory conduct occurred before he filed his grievance," this chronology did not defeat the retaliation claim because the inmate "informed prison officials of his intent to file a grievance and requested an appropriate form...before any misconduct was filed against him. For purposes of [the plaintiff]'s retaliation claim, we cannot discern a substantive distinction between retaliation for informing prison officials of an intent to file a grievance or requesting the necessary forms to do so on the one hand, and actually filing such a grievance on the other." *Id.* at 417.

As in *Watson*, Sibble knew that Golden planned to file a grievance. And like in *Watson*, Sibble's statement that he would issue Golden a misconduct if he filed a grievance shows that Golden's protected activity motivated Sibble's adverse action. *Id.* at 424. This, coupled with Golden later filing a grievance, is enough at the pleadings stage to plausibly infer Sibble's personal knowledge and retaliatory causation.

Accordingly, Golden has stated a *prima facie* retaliation claim against Sibble and Perrin.

The Defendants argue that even if Golden has stated a *prima facie* case of retaliation, their motion to dismiss should be granted because they would have made the same decision regardless of Plaintiffs' protected activity. ECF No. 30, pp. 8-9. They point to Golden's misconduct and the hearing examiner's findings of fact, as stated in the amended complaint.[8] "If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to

---

[8] Although the Defendants reference Golden's misconduct as Exhibit A, it is not attached to their motion or otherwise part of the record. Thus, the Court cannot consider it.

show, by a preponderance of the evidence, that 'they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" *See Cooper v. Garman*, 2021 WL 4033113, at \*8 (M.D. Pa. Sept. 3, 2021) (quoting *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001)). Put differently, "[a] defendant may defeat the claim of retaliation by showing that [he] would have taken the same action even if the plaintiff had not engaged in the protected activity." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

This, however, does not conclusively establish the same decision defense. Upon such a showing that the defendants would have taken the same action, the burden shifts back to the plaintiff to (1) produce "other evidence" of the defendant's retaliatory motive, and (2) demonstrate that the violation of prison policy was "not so 'clear and overt'" that the court can conclude that the defendant would have taken the same action despite this evidence. *Watson*, 834 F.3d at 426; *Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002). If the plaintiff can do this, the burden of proof would revert back to the defendant, and the entry of judgment for the defendant would be inappropriate. *See Carter v. Slater*, 2021 WL 5605289, at \*7 (W.D. Pa. Nov. 30, 2021).

The same decision defense is premature at the motion to dismiss stage. *See Fleming v. Pa. Dep't of Corr.*, 2021 WL 1022628, at \*7 (W.D. Pa. Mar. 17, 2021) (citing *Baez v. Mooney*, 2021 WL 816013, at \*4 (W.D. Pa. Feb. 8, 2021)). As explained, the Defendants bear the initial burden of establishing the same decision defense with evidence. The record is presently insufficient to support this defense. Defendants may reassert this defense once the record is further developed. *See id.*

B.      Intentional Infliction of Emotional Distress[9]

To support an IIED claim, a plaintiff must allege facts to show the following: (1) the

defendant's conduct was extreme and outrageous; (2) his conduct caused the plaintiff severe

emotional distress; and (3) he acted intending to cause that person such distress or with

knowledge that such distress was substantially certain to occur.[10] *Brown v. Muhlenberg Twp.*,

269 F.3d 205, 217-18 (3d Cir. 2001) (citing Restatement (Second) of Torts § 46 (1965)). *See*

*also Robinson v. Nat'l R.R. Passenger Corp.*, 821 Fed. Appx. 97, 102 (3d Cir. 2020). Golden

faces a high bar to support the "extreme and outrageous" conduct element of the claim. Extreme

and outrageous conduct is "so outrageous in character, so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized

society." *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 n.5 (Pa. Super. Ct. 2004)

(quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)). "[I]t has not been enough that the

defendant has acted with intent which is tortious or even criminal, or that he has intended to

inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a

degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Hoy*,

720 A.2d at 754 (quoting Restatement (Second) of Torts § 46 cmt. d). "It is the court's

responsibility to determine if the conduct alleged in a cause of action reaches the requisite level

of outrageousness." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1487 (3d Cir. 1990).

The Defendants argue that their conduct was not extreme and outrageous. ECF No. 30,

p. 6. The Court agrees. Golden's allegations that Perrin and Sibble ignored his requests for his

---

[9] The Court may exercise supplemental jurisdiction over Golden's state law claim because it is so related to his other claims as to form the same case and controversy. *See* 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

missing laundry and failed to replace his lost clothes and blanket after hearing that he was cold, are not extreme and outrageous. The Pennsylvania Supreme Court has identified extreme and outrageous conduct in cases that

> presented only the most egregious conduct. *See*[,] *e.g., Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970) (defendant, after striking and killing plaintiffs son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)); *Banyas v. Lower Bucks Hospital*, 293 Pa.Super. 122, 437 A.2d 1236 (1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

*Hoy*, 720 A.2d at 754 (alteration in original).

Even inferring that the Defendants' decisions were incorrect or wrongful, Golden's allegations are insufficient. *Compare with Wilkinson v. Downston*, 2 Q.B.D. 57 (1897) (in the first example cited to illustrate extreme and outrageous conducted under Section 46 of the Restatement, defendant falsely told the plaintiff that her husband had been severely injured in an accident). In finding that the allegations of the amended complaint do not describe the extreme and outrageousness conduct necessary to support an IIED claim, the Court notes the Supreme

---

[10] Although the Pennsylvania Supreme Court has never explicitly recognized the tort of intentional infliction of emotional distress, it has cited Section 46 of the Restatement (Second) of Torts "as setting forth the minimum elements necessary to sustain such a cause of action" under Pennsylvania law. *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000) (citations omitted). Based on this precedent, the United States Court of Appeals for the Third Circuit has predicted that the Pennsylvania Supreme Court would adopt IIED as a cause of action as stated in Section 46. *Williams v. Guzzardi*, 875 F.2d 46, 50–51 (3d Cir. 1989) (discussing *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (en banc)).

Court's oft repeated admonition that "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

Golden's allegation that Sibble "threatened" to issue a misconduct to him "for complaining too much," [ECF No. 26, ¶ 29] also does not support the extreme or outrageous element. In the prison context and in general, "liability...does not extend to mere insults, threats, annoyances, petty oppressions, or other trivialities." *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988, 991 (1987) (quoting Restatement (Second) of Torts § 46 cmt. d). *See, e.g.*, *Thompson v. AT&T Corp.*, 371 F. Supp. 2d 661, 686–87 (W.D. Pa. 2005) (dismissing IIED claim in which plaintiff was ridiculed and sworn at); *Potter v. Deputy Att'y Generals*, 304 Fed. Appx. 24, 27 (3d Cir. 2008) (affirming dismissal of claim that officer mocked inmate because verbal taunting alone by a prison official cannot establish a Constitutional violation). And the alleged filing of a false misconduct charge against an inmate and his resulting transfer to the RHU have been found not to rise to the level of extreme and outrageous conduct for purposes of IIED. *See Seymour/Jones v. Blair*, 993 WL 497903, at *6 n.13 (E.D. Pa. Dec. 1, 1993) (dismissing Pennsylvania prisoner's IIED claim because "the filing of the misconduct report and plaintiff's segregation in RHU does not rise to the extreme and outrageous level necessary to support an emotional distress claim.") (citation omitted). Simply put, the facts alleged would not cause "an average member of the community" to "arouse his resentment against the actor[s], and lead him to exclaim, 'Outrageous!'" *Kazatsky*, 527 A.2d at 991, 994 (Pa. 1987). For that reason, Golden's IIED claim will be dismissed with prejudice.[11]

---

[11] Given the absence of any basis to find that the Defendants engaged in extreme and outrageous conduct, the Court need not address the Defendants' other arguments for dismissing Golden's IIED claim.

19

C.      Due Process

The Defendants did not move to dismiss Golden's claim that Perrin and Sibble violated

"the Due Process Clause by not providing" him with "required bedding and clothing." ECF No.

26, ¶ 53. But the Court must screen this asserted cause of action for failure to state a claim based

on its obligation under the PLRA, 28 U.S.C. § 1915A, § 1915(e)(2). "[M]eaningful post-

deprivation remedies provide sufficient due process for negligent deprivations of property and

intentional deprivations of property." *Pettaway v. SCI Albion*, 487 Fed. Appx. 766, 768 (3d Cir.

2012) (citing *Parratt v. Taylor*, 451 U.S. 527, 530 (1981), *overruled on other grounds, Daniels

v. Williams*, 474 U.S. 327 (1986)); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). A due process

claim fails where an adequate post-deprivation remedy for the intentional or negligent

deprivation is available. *See Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008) (citing *Hudson

v. Palmer*, 468 U.S. 517, 533 (1984)). "[A]dequate post-deprivation remedies include the ability

to file a state tort action or use of the prison's grievance process." *Mearin v. Folino*, 2013 WL

5332120, at *7 (W.D. Pa. Sept. 23, 2013) (citing *Tapp v. Proto*, 404 Fed. Appx. 563, 567 (3d

Cir. 2010)). The availability of either of these post-deprivation remedies "forecloses any due

process claim…even if [the] inmate is dissatisfied with the result of the process." *Id.* (quoting

*Iseley v. Horn*, 1996 WL 510090, at * 6 (E.D. Pa. Sept. 3, 1996)).

Even assuming Golden had a property interest in the bedding and clothing (*i.e.*, "a

legitimate claim of entitlement," which is "more than a unilateral expectation of it," *Bd. of

Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)), this claim fails because he had an

adequate post-deprivation remedy. Golden alleged that he used the DOC's grievance system.

ECF No. 26, ¶ 41. And Courts in the Third Circuit have routinely held that the DOC's grievance

system satisfies the Due Process Clause. *See, e.g., Spencer v. Bush*, 543 Fed. Appx. 209, 213 (3d

Cir. 2013). Further, state tort law may also provide Golden with a remedy, and he is free to proceed on a conversion theory of liability in this case, subject to any exhaustion or other defense Defendants may raise. *See Hernandez v. Corrections Emergency Response Team*, 771 Fed. Appx. at 145 ("Even if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy") (citation omitted). As any amendment would be futile, Golden's due process claim will be dismissed with prejudice.

  D. The Administrative Procedure Act

  Golden also seeks damages for Perrin and Sibble's alleged violation of the Administrative Procedure Act, 5 U.S.C. § 701 et seq., by denying him a "sanitary environment." ECF No. 26, ¶ 54. The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. If the action is not a "final agency action," 5 U.S.C. § 704, "a plaintiff who challenges such an action cannot state a claim under the APA," and "the action must be dismissed." *Chehazeh v. Att'y Gen. of the U.S.*, 666 F.3d 118, 125 n.11 (3d Cir. 2012) (internal quotations marks and citations omitted). Golden has not challenged a final agency action. *Landis v. Wilson*, 2021 WL 4502234, at *8 (M.D. Pa. Sept. 30, 2021), *aff'd*, No. 21-2985, 2022 WL 2128563 (3d Cir. June 14, 2022). And "damages are not an available remedy" under the APA. *Ngono v. Moshannon Valley Corr. Ctr.*, 2021 WL 4994341, at *3 (W.D. Pa. Sept. 3, 2021), *report and recommendation adopted*, 2021 WL 4304812 (W.D. Pa. Sept. 22, 2021). Thus, the APA claim will be dismissed with prejudice.

E.   Leave to Amend

When dismissing a *pro se* civil rights complaint, "a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). A court should not allow amendment if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). Golden's state law IIED claim, his Fourteenth Amendment due process claim, and his Administrative Procedure Act claim are all dismissed with prejudice. Any attempt to cure the deficiencies in these claims would be futile. The conduct upon which Golden bases his IIED claim is not "extreme and outrageous" as a matter of law, and the other two claims suffer from legal deficiencies that cannot be cured by factual amendment.

V.      Conclusion

For these reasons, the Defendants' partial motion to dismiss [ECF No. 29] will be GRANTED IN PART and DENIED IN PART. Specifically, the Motion will be DENIED as to Golden's retaliation claim against both Defendants and GRANTED in all other respects. Golden's state law IIED, Fourteenth Amendment due process, and Administrative Procedure Act claims will be dismissed with prejudice. A separate Order follows.

DATED this 15th day of July, 2022.

BY THE COURT:

RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE